UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MONIQUE DRAGOIU,                                    Case No. 13-14786

               Plaintiff,                          Denise Page Hood
v.                                                  United States District Judge

COMMISSION OF SOCIAL SECURITY            Michael Hluchaniuk
                                                    United States Magistrate Judge
               Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTION FOR SUMMARY JUDGMENT (Dkt. 17, 22)**

## I.    PROCEDURAL HISTORY

    A.    <u>Proceedings in this Court</u>

On November 20, 2013, plaintiff, proceeding *pro se*, filed the instant suit

seeking judicial review of the Commissioner's unfavorable decision disallowing

benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule

72.1(b)(3), District Judge Denise Page Hood referred this matter to the

undersigned for the purpose of reviewing the Commissioner's decision denying

plaintiff's claims for period of disability and disability insurance benefits.  (Dkt.

3).  This matter is before the Court on cross-motions for summary judgment.  (Dkt.

17, 22).  Plaintiff also filed a reply brief in support of her motion for summary

judgment.  (Dkt. 24).  These motions are now ready for report and

1

recommendation.

B.    Administrative Proceedings

Plaintiff filed the instant claim for disability insurance and period of disability benefits on August 23, 2010, alleging disability beginning January 20, 2004.  (Dkt. 12-2, Pg ID 111).  Plaintiff's claims were initially disapproved by the Commissioner on May 18, 2011.  *Id*.  Plaintiff requested a hearing and on April 18, 2012, plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Ramona L. Fernandez who considered the case de novo.  (Dkt. 12-2, Pg ID 111-122).  In a decision dated May 4, 2012, the ALJ found that plaintiff was not disabled.  *Id*.  Plaintiff requested a review of this decision, and the ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits,[1] the Appeals Council on September 19, 2013, denied plaintiff's request for review.  (Dkt. 12-2, Pg ID 89-95); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

plaintiff's motion for summary judgment be **GRANTED** in part and **DENIED** in part, that defendant's motion for summary judgment be **GRANTED** in part and **DENIED** in part, that the findings of the Commissioner be **REVERSED** in part, and that this matter be **REMANDED** for further proceedings under Sentence Four.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was born in 1978 and was 32 years old on the last date insured. (Dkt. 12-2, Pg ID 121).  Plaintiff had past relevant work as a marketing consultant. *Id*.  The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that between the alleged onset date and the last date insured, plaintiff engaged in substantial gainful activity in 2005, 2006, and 2007.  (Dkt. 12-2, Pg ID 114).  At step two, the ALJ found that plaintiff had the following severe impairs: degenerative disc disease of the cervical spine, obesity, asthma, bilateral carpal tunnel syndrome, and anxiety.  (Dkt. 12-2, Pg ID 114).  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  *Id*.

The ALJ determined that plaintiff had the residual functional capacity (RFC) to perform a sedentary work with the following limitations:

> After careful consideration of the entire record, the

3

undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can only occasionally climb, stoop, kneel, crouch, crawl or balance; no ladders/ropes/scaffolds; only occasional twisting or turning at neck; no concentrated exposure to fumes, odors, dust, gases or other respiratory irritants; no work with moving machinery or unprotected heights; unskilled with simple instructions, routine changes, and no more than occasional interaction with coworkers, supervisors or general public.

(Dkt. 12-2, Pg ID 116).  At Step Four, the ALJ found that plaintiff could not perform her past relevant work.  (Dkt. 12-2, Pg ID 120).  However, the ALJ determined that, considering plaintiff's age, education, experience, and RFC, there were jobs that exist in sufficient numbers that plaintiff can perform and therefore, plaintiff had not been under a disability from the alleged onset date through the last date insured.  (Dkt. 12-2, Pg ID 122).

B.   Plaintiff's Claims of Error

Plaintiff first argues that she meets the requirements of Listing 12.04 for affective disorders, relying on the medical records of her treating physician, Dr. Mark Werner and the Easter Seals records.  Plaintiff lists the following "medical requirements" in support of her argument:

• Appetite disturbance with change in weight (Obesity; Weight Gain)

• Sleep disturbance (Recurrent Nightmares; Insomnia; Tremors; Panic Attacks; Documents Sleep Apnea 11+

4

times per hour) as documented by Dr. Desai in the filed
Sleep Study.

• Decreased energy (For which she was prescribed
Amphetamine Salts)

• Feelings of guilt or worthlessness (Depression for
which she was prescribed both Zoloft and Prozac along
with Xanax)

• Difficulty concentrating or thinking (For which she was
prescribed Adderall)

• Thoughts of suicide (For which she was prescribed
Zoloft and Prozac as well as
Seroquel)

• Hallucinations, delusions, or paranoid thinking
(Prescribed Seroquel)

In addition, plaintiff contends that these symptoms cause her to have

significant restrictions in normal activities of daily living, including driving,

personal care and social functioning, significant restrictions in maintaining

concentration, persistence, pace, and repeated episodes of decompensation.

Plaintiff asserts that this began January 2004 and has continued through to the

present.  According to plaintiff, she has a medically documented history of a

chronic affective disorder of at least 2 years' duration that has caused more than a

minimal limitation of ability to do basic work activities, with symptoms or signs

currently attenuated by medication or psychosocial support (Easter Seals) with (1)

repeated episodes of decompensation, each of extended duration, (2) a residual

disease process that has resulted in such a marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate, or (3) current history of 1 or more years' inability to function outside of a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Plaintiff contends that the ALJ erred by not finding that she met or equaled listings 12.04 (affective disorders) including Post Traumatic Stress Disorder, or 12.06 (anxiety-related disorders) Postpartum depression, postpartum psychosis, panic attacks and hypochondria.  Plaintiff acknowledges that to meet the listings of 12.04 or 12.06, she must satisfy the criteria of paragraphs A and B. 20 C.F.R. pt. 404, sub pt. P, app. 1 §§12.04, 10.06.  Paragraph A consists of a clinical finding that medically substantiates a mental disorder.  Paragraph B requires plaintiff to establish at least two of the following: (1) marked restriction of activities of daily living, (2) marked difficulties in social functioning, (Plaintiff was also a victim of domestic violence) from 2004 - 2006 in Waterford, Michigan wherein her face was shoved into a mattress so that she could not breathe and she was grabbed around her neck and yanked by her hair banging her head onto the hard porcelain tiled floor) which was noted by police officers after seeing the physical marks on her body and broken items though out the home.  Plaintiff sought counseling through Haven and Common Ground; (3) Marked difficulties in

6

maintaining concentration, persistence, and pace; or repeated episodes of decompensation, each of extended duration. (See Exhibit E). Plaintiff contends that she meets the PTSD (Post-traumatic stress disorder) requirements under the SSA's listings as she suffers from disruptive flashbacks, nightmares and memories that regularly cause her distress. According to plaintiff, her treating physician attributed the postpartum depression to the PTSD as being linked. These episodes continually interfere with daily activities, and the ability to concentrate at work. Plaintiff says that she meets the criteria in paragraph B because she has marked restrictions in activities of daily living and social functioning including holding and bathing her infant son during postpartum psychosis and continually requiring assistance in her daily living arrangements with assistant care from friends and family due to her constant and unrelenting pain.

Plaintiff contends that the ALJ falsely noted as not experiencing episodes of decompensation, which is untrue. In mid 2004, plaintiff attempted to go back to her prior position at Nehoc, Incorporated where she worked as a travel agent. However, after a very short time, she was fired by the owners as they stated she was not working as she had in the past and seemed to not have the same abilities. Plaintiff suffered from debilitating mental fog, fibromyalgia joint pain, PTSD; water retention, cystic formations throughout the body creating nerve compression, severe asthma, obesity, hypothyroidism, vertigo, depression, anxiety

7

and fatigue as well as instances of "loss of consciousness" which led to her being let go from the position. After that, again she attempted to work at a position in Farmington Hills as a marketing consultant. Once again, after a short time, she was let go because she was unable to perform at her position due to all of her limitations leading to yet another episode of decompensation which continued to repeat though she kept trying.

Plaintiff argues that, if properly considered in combination, her conditions should have equaled listings 12.04 (affective disorders) and/or 12.06 (anxiety-related disorders). Plaintiff argues that she "met" the listed criteria and her conditions "equaled" a listing. Plaintiff contests that the ALJ, failed to consider her obesity in combination with her mental health conditions and the musculoskeletal; endocrine; neurological conditions all to be interlinked. The DDS evaluations of all of her conditions concluded that her limitations in activities of daily living, social functioning, and concentration, persistence, and pace were either mild or moderate. According to plaintiff, these conditions not being combined to show an "equaled" listing subject her to prejudice of relief for which she contests she is eligible. Her asthma is worsened by her obesity and the lack of breath leads to panic attacks, anxiety, depression, lack of sleep, fatigue and is a vicious cycle of unrelenting pain.

Plaintiff asserts that her postpartum psychosis; depression and anxiety that

her physician noted regularly in his office visit notes from 2004 intertwining Fibromyalgia and Obesity along with prescriptions for amphetamine salts, aggravated the anxiety and mental disorders leading to police reports where she locked herself and the children in the room and dialed White Lake Police and 911 because she felt her estranged partner had a gun and shovel in the back of his truck and was going to dig their graves and bury them all together. Plaintiff also is greatly affected by childhood traumas and being hit in the head with solid brass and metal objects which continue to cause actual feelings from PTSD, which is said by her treating physician to be connected to the Fibromyalgia and potentially to the traumatic brain incidents of the "loss of consciousness and blackout" episodes.

Plaintiff saw Easter Seals for years after the birth of her son and was unable to drive during a majority of that time due to fears of crashing and troublesome visions. Plaintiff continued to seek medical help through the years. Plaintiff was forced to discontinue amphetamine salts which some doctors contested would cause heart failure and refused to treat her, however other doctors believed that this would counteract the Fibromyalgia; ADHD; and Obesity. However, due to the side affects, plaintiff could not continue them although they did increase her energy level, they also compounded the existing conditions.

Lastly, plaintiff argues that evidence secured after her hearing and appeal

9

requires a remand for further administrative consideration.  Plaintiff has presented

new and continuing medical documentation with her Second Amended Complaint

and this motion for Summary Judgment.  These records indicate that Plaintiffs

condition continues and she continually seeks treatment for pain.  A clinical

examination re-confirms continuing fibromyalgia; MRI results show

hypo-intensity of the outer clavicle; Snapping Scapula; Distal Clavicle Cysts

associated with Fibromyalgia; and neck/spine issues relating to nerve sheathe

diverticula; left neural foraminal narrowing produced by a left para-central disc

osteophyte and uncovertebral joint hypertrophy; continuing nerve damage causing

the pain and associated depression, and anxiety-related issues relating to the

disorders.

Plaintiff contends that in light of this new evidence the case deserves a

"sentence six" remand.  The sixth sentence of 42 U.S.C. § 405(g) provides that a

court may remand a case and "order additional evidence to be taken before the

Commissioner of Social Security, but only upon a showing that there is [1] new

evidence which is [2] material and [3] there is good cause for the failure to

incorporate such evidence into the record in a prior proceeding." 42 U.S.C.

§ 405(g).  To be new, evidence must not be cumulative, duplicative or repetitive.

*Vadeboncoeur v. Callahan*, 976 F. Supp. 751, 54 (N.D. Ill. 1997).  Plaintiff pleads

that this material evidence is relevant and probative relating to the period

considered by the SSA symptomatic and connected to the Fibromyalgia. *Merrill v. Comm'r of Soc. Sec.*, 1999 WL 1012868 (D. Or. 1999). Plaintiff contends that due to continuing treatment and effects of the medications necessary in order to control the symptoms, her psychological conditions have failed to improve due to the pain, anxiety and depression associated with the conditions and weekly visits to doctors and emergency rooms/surgical treatments, and that this proof stands to change the ALJ's decision.

Finally, plaintiff asserts that she had demonstrated good cause for failure to submit the new evidence due to a cancerous condition within the body that had gone undiagnosed from 2004 wherein nuclear scans were sought regarding thyroid conditions but were not surgically removed until 2013. "[A] sixth-sentence remand is appropriate only when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed that proceeding's outcome." *Sullivan v. Finkelstein*, 496 U.S. 617, 618 (1990). The evidence here was unavailable and not in existence. According to plaintiff, the Department of Wayne State Rheumatology physician issued a clinical examination re-confirming the prior 2004 diagnosis of fibromyalgia showing that the condition continues to affect the daily life of plaintiff and the debilitating flairs produce cystic formations throughout the body leading to addition pain and discomfort.

11

Plaintiff also filed a short second "brief" as an attachment to her motion for summary judgment, in support of her request for a remand pursuant to Sentence Six. (Dkt. 17-2, Pg ID 684-686). Plaintiff asserts that a remand under sentence six of 42 U.S.C. § 402(g) is appropriate because this is not an issue of deterioration, but rather, an issue of identification of the conditions that have been causing the onset of health problems since 2004. Plaintiff says she was subjected to discrimination and questioning of her character and credibility with representation that was less than adequate and was not armed with the evidence to defend herself until after her surgery and continuing follow-up.

C.     The Commissioner's Motion for Summary Judgment

Plaintiff argues that she met the requirements for Listing 12.04, Affective disorders, and Listing 12.06, Anxiety-related disorders. The Commissioner first points out that plaintiff bears the burden of proving that her condition met these Listings. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Hale v. Sec'y of HHS*, 816 F.2d 1078, 1083 (6th Cir. 1987). "[F]or a claimant to show that his impairment matches a listing it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 30 (1990) (emphasis in original); see 20 C.F.R. §§ 404.1525(c), 404.1525(d). Moreover, to demonstrate medical equivalence, the claimant must present "medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Id.* (emphasis in original). In order to meet

12

Listing 12.04 and Listing 12.06, plaintiff was required to prove either (1) the

paragraph A and the paragraph B criteria for these Listings or (2) the paragraph C

criteria. 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.04, 12.06.

According to the Commissioner, plaintiff cannot demonstrate that she met

either Listing 12.04 or 12.06 because substantial evidence supported the ALJ

finding that plaintiff had only mild or moderate limitations in the functional areas

of paragraph B and had experienced no episodes of decompensation. (Tr. 26-27).

ALJs assess the level of severity of a claimant's mental impairment at steps two

and three of the five step sequential evaluation by rating the claimant's mental

limitations and restrictions in four functional areas: (1) activities of daily living;

(2) social functioning; (3) concentration, persistence or pace; and (4) episodes of

decompensation. *See* 20 C.F.R. § 404.1520a(c)(3), citing 20 C.F.R. Part 404,

Subpart P, Appendix 1, § 12.00(C). In order to satisfy the paragraph B

requirements, plaintiff must prove marked limitations in two of the three

functional areas or repeated episodes of decompensation, each of extended

duration. 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.04(B), 12.06(B).

The Commissioner contends that the ALJ reasonably found that plaintiff

had mild limitations in activities of daily living. (Tr. 27). As the ALJ noted,

plaintiff's statements in a Function Report, a report submitted as part of the

application process, suggested that her activities of daily living were primarily

limited by her physical complaints. (Tr. 27, citing Tr. 201-08).  The ALJ

nonetheless recognized plaintiff's reports that she battled depression daily, and

accordingly found this would likely have at least some effect on her activities.

(Tr. 27, citing Tr. 205).  In social functioning, the ALJ reasonably found plaintiff

had moderate difficulties.  (Tr. 27). The ALJ cited Plaintiff's admissions that she

was able to shop on rare occasions and that she was able to take her children to

school and to doctor appointments without undue difficulty from her mental

impairment.  (Tr. 27, citing Tr. 56, 204).  The ALJ acknowledged plaintiff's

testimony that she avoided socializing, but noted that she was able to live with

family without difficulty.  (Tr. 27, citing Tr. 202, 205-06).

        Turning to the broad functional category of concentration, persistence or

pace, the Commissioner asserts that the ALJ reasonably found moderate

difficulties.  (Tr. 27).  The ALJ noted that plaintiff said she had difficulty

concentrating and remaining focused.  (Tr. 27, citing Tr. 202, 205-06).  The ALJ

further recognized plaintiff's statements that she had difficulty managing her

household finances, remembering appointments and medications, and dealing with

stress and changes in routine.  (Tr. 27, citing Tr. 202- 07).  Despite these

allegations, the ALJ noted that Plaintiff continued to drive and was able to care for

two young children with some assistance.  (Tr. 27, citing Tr. 55- 56, 204).  Thus,

the Commissioner asserts that the ALJ reasonably found this evidence

demonstrated more than mild, but still moderate restriction in this functional area. (Tr. 27).

According to the Commissioner, that plaintiff wishes the ALJ would have weighed her testimony and the medical evidence opinion differently to find that she had more severe limitations in these three broad functional areas is not a basis for remanding this case. The Commissioner points out that the substantial evidence standard presupposes that there is a zone of choice within which the decision-maker can go either way, without interference by the courts. *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009). While plaintiff may disagree with the ALJ, the ALJ's findings in this case were well within the zone of reasonable choices. *See McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Therefore, because substantial evidence supported the ALJ finding only mild or moderate severity of limitations in these broad functional areas, the Commissioner maintains that plaintiff cannot satisfy Listing 12.04 or 12.06.

Absent marked limitations in these functional areas, the Commissioner asserts that plaintiff could only satisfy Listing 12.04 by proving the paragraph C criteria. Paragraph C of 12.04 requires the following:

> Medically documented history of a chronic affective
> disorder of at least 2 years' duration that has caused
> more than a minimal limitation of ability to do basic

work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04(C).  According to the Commissioner, plaintiff's argument recites the standard for paragraph C, but fails to cite any evidence to suggest that she satisfies the criteria in this paragraph. The Commissioner also maintains that nothing in the medical record suggests plaintiff could satisfy paragraph C.  (Tr. 455-56).

Plaintiff also requests that her case be remanded for consideration of evidence that was not submitted to the ALJ.  A reviewing court may remand a case for consideration of additional evidence submitted to the court if the party seeking remand proves that the additional evidence is new and material, and that he or she had good cause for his or her failure to incorporate the additional evidence into the record during the administrative hearing. 42 U.S.C. § 405(g); *Melkonyan v.*

*Sullivan*, 501 U.S. 89, 99, 102 (1991); *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990); *Oliver v. Sec'y of HHS*, 804 F.2d 964, 966 (6th Cir. 1986). The burden of showing that a remand is proper under Section 405(g) is on the party seeking the remand. *Willis v. Sec'y of HHS*, 727 F.2d 551, 553-54 (6th Cir. 1984). Additional evidence is new if it was not in existence or available to the claimant at the time of the administrative proceeding . . . ." *Finkelstein*, 496 U.S. at 626. Additional evidence is material only if it concerns the plaintiff's condition prior to the ALJ's hearing decision (or the claimant's date last insured). *Oliver v. Sec'y of HHS*, 804 F.2d 964, 966 (6th Cir. 1986). To satisfy the materiality requirement, the proponent of the new evidence must show that there was a "reasonable probability" that the Secretary would have reached a different conclusion on the issue of disability if he was presented with the additional evidence. *Sizemore v. Sec'y of HHS*, 865 F.2d 709, 711 (6th Cir. 1988). The good cause requirement is satisfied if there is a "valid reason" for the failure to submit evidence at a prior hearing. *Oliver*, 804 F.2d at 966. The Commissioner contends that none of the records plaintiff attaches to her motion provide a basis for remand under Sentence Six because all of the records post-date the ALJ's hearing as well as plaintiff's date last insured. (Tr. 669-683, 689-95). *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 478 (6th Cir. 2003) ("[T]his information comes over a year after the ALJ's denial of benefits and several months after the district court's reversal and

award of benefits, and cannot, therefore, be considered by this court on review.");
*Casey v. Sec'y of HHS*, 987 F.2d 1230, 1233 (6th Cir. 1993) ("The rest of the
material contained in the additional evidence pertains to a time outside the scope
of our inquiry."); *King v. Sec'y of HHS*, 896 F.2d 204, 206 (6th Cir. 1990)
(evidence of worsening condition does not show that the evidence is material)
(later award of benefits immaterial). The Commissioner points out that all of the
attached records date from 2013 or 2014 more than two to three years after her
date last insured, March 2011. (Tr. 669-683, 689-95). According to the
Commissioner, there is nothing in the records that suggests that they relate to
plaintiff's condition prior to March 2011. As the ALJ noted, plaintiff's condition
worsened following a car accident in October 2011. (Tr. 31, 51, 57, 62).
"Evidence which reflected applicant's aggravated or deteriorated condition is not
relevant because such evidence does not demonstrate the point in time that the
disability itself began. Reviewing courts have declined to remand disability
claims for reevaluation in light of medical evidence of a deteriorated condition."
*Sizemore v. Sec'y of HHS*, 865 F.2d 709, 712 (6th Cir. 1988). If a claimant's
condition had seriously degenerated, the appropriate remedy is to initiate a new
claim for benefits as of the date that the condition aggravated to the point of
constituting a disabling impairment. *Id*.

      Contrary to plaintiff's suggestion, the Commissioner contends that the mere

diagnosis of fibromyalgia in March 2014 does not prove or establish work-related limitations beyond those provided by the ALJ in his residual functional capacity assessment.  *See Despins v. Comm'r of Soc. Sec.*, 257 Fed.Appx. 923, 930 (6th Cir. 2007) ("The mere existence of those impairments, however, does not establish that Despins was significantly limited from performing basic work activities for a continuous period of time."); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam) ("mere diagnosis of arthritis . . . says nothing about the severity of the condition").

It also appears that plaintiff wishes the court to consider records for treatment provided by Easter Seals - Michigan following the birth of her son in 2004.  (Tr. 447-95).  These records were submitted after the ALJ decision to the Appeals Council.  (Tr. 5).  The ALJ explicitly did not review records reasoning that the patient name on the records was plaintiff's son, not plaintiff.  (Tr. 23, 30-31, Tr. 457-95).  Because the Easter Seals records were not considered by the ALJ, they cannot be considered by this court in reviewing the ALJ's decision. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).

The Commissioner also argues that the Easter Seals records do not provide a basis for remand under Sentence Six because there is not a "reasonable probability" that the ALJ would have reached a different conclusion on the issue of disability if he was presented with the additional evidence.  *See Sizemore*, 865

19

F.2d at 711.  Plaintiff began treating with Easter Seals after the birth of her son in

2004 complaining of nightmares regarding the birth process, anxiety , and

difficulty.  (Tr. 493).  The records show treatment for both plaintiff and her infant

son.  (*See* Tr. 473, 491).  In March 2004, plaintiff relayed that she had gone from

being the primary wage earner while her husband finished school to now being a

stay at home mom.  (Tr. 491).  In July 2005, plaintiff reported progress since she

began services and said she only had negative feelings sporadically.  (Tr. 473,

477).  In May 2006, treatment records show that plaintiff took medication for

postpartum depression for only a "short period of time."  (Tr. 458).  In addition,

plaintiff reported that her mood was much more stable and that she had not have

any negative thoughts about her son.  (Tr. 458).  While the Easter Seals records

show treatment for postpartum depression, the Commissioner maintains that they

do not demonstrate a reasonable probability of a different conclusion.  And,

according to the Commissioner, plaintiff's argument does not identify any portion

of the Easter Seals records that suggests otherwise.

     D.    <u>Plaintiff's Reply</u>

In reply, plaintiff asserts that the ALJ's decision indicates that plaintiff

suffers from a mental health impairment, however the ALJ failed to comply with

the special technique set forth in 20 C.F.R. § 404.1520a or § 416.920a.  Plaintiff

argues that the ALJ is required to follow the regulatory procedures for evaluating a

mental health impairment, including, but not limited to, documenting the application of the special technique in the decision itself.  The ALJ asserted that plaintiff experienced no episodes of decompensation, however, plaintiff contends that the ALJ failed to explain the continued episodes of decompensation documented within her Social Security file (Exhibit K) and beginning in 2004 to the present which met 12.04 and 12.06.  Plaintiff says she made five attempts to return to her position, and each attempt fails to be substantial and gainful employment.  In 2004, Plaintiff attempts her prior position at NEHOC, Incorporated and is fired shortly after for inability to perform.  Again in 2005, she attempts to return to her prior position and once again, despite her best efforts, she was fired for failure to perform.  According to plaintiff, this situation occurred again in 2006, 2007 and in 2008 and 2009, she was unable to secure any employment.  In 2010, plaintiff secured one position that lasted 2 days before she was removed for inability to perform.  According to plaintiff, this represents a series of decompensation over the timeframe of over 11 years that the ALJ did not take into consideration, finding her to not meet requirements for any decompensation, when in fact she presents evidence that she did continually attempt to work at her position and each attempt failed.

In addition, plaintiff's psychiatrist Dr. Albert Bayer, the treating psychiatrist referred to plaintiff in 2004 by Dr. Mark Werner, was unreachable for office notes

and medication records to both plaintiff and defendant in development of the

record, due to Suspension of License as a physician for inappropriate sexual

encounters with patients and closing down of the practice. (See Exhibit J).

When the ALJ failed to consider plaintiff's episodes of decompensation as noted

consistently from 2004 to present, plaintiff says she was prejudiced as to meeting

the functional areas. In addition, plaintiff was also listed as having attention

deficit disorder from 2004 to present within Dr. Werner's medical records and

prescribed Adderall for the condition within office notes. However, plaintiff says

this was never fully considered in the ALJ review and how it mentally impairs her

activities of daily living, social functioning, concentration/persistence/pace and

episodes of decompensation, nor was the Fibromyalgia, DDD and other ailments

plaguing the plaintiff – as a whole conglomerate. Considering the nature of the

mental impairment plaintiff alleged and Easter Seals records upheld, the nature of

the medical data, and the condition of the record, a non-treating, nonexamining

physician had an insufficient basis to make a reasoned equivalency determination

without performing a personal examination. *Smith v. Schweiker*, 795 F.2d 343,

348 (4th Cir. 1986).

Plaintiff also points to the recordings of the initial hearing on which the ALJ

determined that Plaintiff was not disabled, which show her emotional outburst and

tearful episodes, inability to answer questions; and confusion regarding time

22

frames and memory showed further evidence of mental instability.  Plaintiff also contends that the ALJ did not explain on what basis he denied consideration of Dr. Werner's notes regarding plaintiff's inability to work or that of the Social Worker, (Sandra McFarland's) written testimonial attesting to plaintiff's need for medication and therapy due to mental conditions.  According to plaintiff, the evidence she has presented is "material" being that "there is a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence."  And, a claimant shows "good cause" when she can demonstrate a "reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Id*.  The burden of proof is on the claimant to show that a remand is appropriate. *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 653 (6th Cir. 2009).

According to plaintiff, she and defendant were unable to fully develop and access her psychiatric records from Dr. Bayer due to suspension of his medical license and the records not being turned into the affiliated hospital which showed the log of various prescriptions he handed directly to patient inside of his clinic (including Seroquel and other anti-psychotics) which he handed to her to prevent further schizophrenic and bipolar episodes; postpartum psychosis; and obsessive compulsive behaviors that could threaten the safety of herself and those around her.  Plaintiff felt paranoid and uncomfortable with aforementioned psychiatrist

23

and her fears and depression were worsened by the diagnosis of the mental disorders for which he medicated her, leading her back to continuing medical care with her PCP Dr. Mark Werner.  In 2010, Dr. Schwartz, oncologist recommended that plaintiff seek additional psychiatric counseling due to her continuing anxiety and "flight of ideas."  Once again, plaintiff returned to Dr. Mark Werner PCP and in addition sought counseling from Professor, Dr. Richard Brooks.

Plaintiff relies on *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999), in which Third Circuit held that the ALJ did not fulfill her duty to explore the claimant's alleged mental impairment.  *Id*. at 433.  At the hearing, the ALJ gave the claimant the option of proceeding without obtaining additional psychiatric evidence, or obtaining a remand based on the need for additional psychiatric evidence.  *Id*. at 432.  As a consequence, there was no testimony during the hearing concerning the claimant's mental impairments and the ALJ did not solicit the claimant's testimony at the hearing as to how her anxiety and depression affected her activities of daily living; social functioning; concentration, persistence or pace; or caused deterioration or decompensation in work or work-like settings, which are the "criteria which are measured in order to ascertain the degree of functional loss by the claimant's impairments."  *Id*. at 434-35, citing 20 C.F.R. § 404.1520a(b)(3).  "In fact, the ALJ barred the claimant from raising her mental disabilities altogether, but then inexplicably concluded the claimant's depression and anxiety

24

only had a minimal effect on these very criteria." *Id*. at 434.  The Third Circuit

concluded that there was not substantial evidence to support the ALJ's decision

regarding the extent of the claimant's mental impairment.  *Id*.  Because the case

was remanded for further proceedings, the Third Circuit stated that it was

unnecessary to address the claimant's contention that the ALJ did not incorporate

in his decision the Psychiatric Review Technique findings required by the

regulations, noting that "such deficiency, if it exists, can be remedied in a future

decision." *Markle v. Barnhart*, 324 F.3d 182, 189 (3d Cir. 2003).

Plaintiff pleads with the Court for remand as this also was her situation.

"Although the district court acknowledged that the failure to prepare a PRTF can,

under certain circumstances, constitute harmless error, where the record contained

evidence of a severe mental impairment, the failure to prepare a PRTF required

reversal and remand where reports from two medical providers constituted

sufficient evidence to establish that a severe impairment existed." *Kelly v. Chater*,

952 F. Supp. 419, 426 (W.D. Tex. 1996).  In spite of Dr. Werner's letter and other

physicians and social worker (Sandra McFarland of Easter Seals testimonial),

plaintiff says that the ALJ did not apply the "special technique" to determine the

severity of her mental impairments. According to plaintiff, the ALJ should have

used the special technique to evaluate plaintiff's "pertinent symptoms, signs, and

laboratory findings" to determine first whether plaintiff had a medically

determinable mental impairment when considered with all impairments as a whole. 20 C.F.R. § 404.1520a(b)(1).  Plaintiff further argues that the ALJ did not consider the Easter Seals records pertaining to her even considering that Easter Seals had made an arrangement wherein they paid the psychiatrist under plaintiff's name and kept records exclusively under her name including prescribing medication under these records through Dr. Corina Lazar, psychiatrist.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions

26

absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion

27

about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of

28

appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have

29

different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

> Step Four:  If the claimant is able to perform his or her

30

past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

31

decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

    C.    <u>Analysis</u>

        1.    The Listings

In the view of the undersigned, plaintiff has failed to offer any medical evidence to support her contention that her mental impairment meets or equals Listing 12.04 or 12.06.  In order to meet either Listing 12.04 or Listing 12.06, plaintiff must show that he satisfies the criteria in both Paragraphs A and B of those listings.  20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04, 12.06.  The A criteria consist of clinical findings which medically substantiate a mental disorder.  To satisfy the B requirements of Listings 12.04 and 12.06, plaintiff must establish at least two of the following limitations: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration.  *Id.*  Alternatively, under Listing 12.04 or 12.06, a claimant may satisfy the requirements of a listed mental impairment if he has a medically substantiated mental impairment and functional limitations that meet the "C" criteria of the listing.   The "C" criteria for Listing

32

12.04 requires a medically documented history of a mental impairment and one of the following: (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease that has resulted in such marginal adjustment that even minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement with a need for such an arrangement to continue. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04. For Listing 12.06, the "C" criteria is met if the mental impairment resulted in the "complete inability to function independently outside the area of one's home." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.06. There is simply no record evidence that would support a finding that plaintiff met or equaled Listing 12.04 or Listing 12.06. Indeed, Dr. Werner's conclusory opinion is not supported by any treatment notes and he offers no opinions regarding plaintiff's specific functional limitations. Thus, this opinion is certainly not supportive of the conclusion that plaintiff met or equaled the listings. And, the ALJ reasonably gave his opinion little weight.

On a related note, plaintiff contends that the ALJ erred by not completing the Psychiatric Review Technique Form (PRTF). Under 20 C.F.R. § 404.1520a, which governs the evaluation of mental impairment, an ALJ is no longer required to complete the form, but must include "pertinent findings and conclusion based

33

on the technique" in the decision.  *See* 20 C.F.R. § 416.920a(e).  In this case, there

is no consulting physician opinion in the record and no PRTF in the record.  Thus,

while the ALJ may not have violated the particular regulation cited by plaintiff,

the lack of any medical opinion in the record regarding plaintiff's mental

limitations is problematic.  The ALJ noted that Dr. Domino concluded that there

was insufficient evidence in the record to evaluate plaintiff's mental impairments

before the last date insured.  (Dkt. 12-2, Pg ID 120).  However, the ALJ concluded

that this opinion conflicted with the evidence added to the file at a later date.  *Id*.

However, no subsequent medical opinion regarding plaintiff's mental impairments

and resulting functional limitations was obtained.  Indeed, no other treating

physician or any other consulting or examining physician offered any other

opinions regarding plaintiff's functional limitations.  Thus, we are left with the

circumstance of the ALJ interpreting raw medical data without the benefit of an

expert medical opinion.

Importantly, in weighing the medical evidence, "'ALJs must not succumb to

the temptation to play doctor and make their own independent medical findings.'"

*Simpson v. Comm'r of Soc. Sec*., 344 Fed. Appx. 181, 194 (6th Cir. 2009), quoting

*Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).  Accordingly, "an ALJ may not

substitute his [or her] own medical judgment for that of the treating physician

where the opinion of the treating physician is supported by the medical evidence."

34

*Id.* (internal quotations omitted); *see also Bledsoe v. Comm'r of Social Sec.*, 2011 WL 549861, at *7 (S.D. Ohio Feb. 8, 2011) ("An ALJ is not permitted to substitute her own medical judgment for that of a treating physician and may not make her own independent medical findings."); *Mason v. Comm'r of Soc. Sec.*, 2008 WL 1733181, at *13 (S.D. Ohio Apr. 14, 2008) ("The ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record.").  In other words, "[w]hile an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, the ALJ cannot substitute his [or her] own lay 'medical' opinion for that of a treating or examining doctor."  *Beck v. Comm'r of Soc. Sec.*, 2011 WL 3584468, at *14 (S.D. Ohio June 9, 2011), *adopted by* 2011 WL 3566009 (S.D. Ohio Aug. 12, 2011).

The undersigned recognizes that the final responsibility for deciding the RFC "is reserved to the Commissioner."  20 C.F.R. § 404.1527(d).  Nevertheless, courts have stressed the importance of medical opinions to support a claimant's RFC, and cautioned ALJs against relying on their own expertise in drawing RFC conclusions from raw medical data.  *See Isaacs v. Astrue*, 2009 WL 3672060, at *10 (S.D. Ohio 2009) ("The residual functional capacity opinions of treating physicians, consultative physicians, and medical experts who testify at hearings are crucial to determining a claimant's RFC because '[i]n making the residual

functional capacity finding, the ALJ may not interpret raw medical data in functional terms.'"), quoting *Deskin v. Comm'r Soc. Sec.*, 605 F. Supp.2d 908, 912 (N.D. Ohio 2008); *see also Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the [RFC] determination."); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) ("By independently reviewing and interpreting the laboratory reports, the ALJ impermissibly substituted his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence.").

Although ultimately a finding of no disability at either step four or five of the sequential evaluation may be appropriate in this case, substantial evidence does not exist on the record to support the current RFC determination. While Dr. Werner offered a conclusory opinion regarding plaintiff's ability to work, he offered no opinions regarding her functional limitations resulting from any mental impairment. And, there is no RFC determination by a consulting physician. Thus, the ALJ's RFC determination (at least in part) was not based on any medical opinion but was apparently formulated based on his own independent medical findings. Under these circumstances, the undersigned suggests that a remand is necessary to obtain a proper medical source opinion to support the ALJ's residual

functional capacity finding as to plaintiff's mental limitations.

Similarly, "[w]hether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue." *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) (citing 20 C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir. Nov. 22, 1995) ("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b). As set forth above, there is no PRTF or equivalency determination by a medical/mental health expert in this case and thus, no medical expert's opinion on the issue of equivalency. The great weight of authority holds that a record lacking any medical advisor opinion on equivalency requires a remand. *Stratton v. Astrue*, 2012 WL 1852084, at *13 (D.N.H. 2012) (collecting cases); *Harris v. Comm'r of Soc. Sec.*, 2013 WL 1192301, at *8 (E.D. Mich. 2013) (remanding because a medical opinion on the issue of equivalence is required, regardless of whether the SDM model is implicated); *Hayes v. Comm'r of Soc. Sec.*, 2013 WL 766180, at *8-9 (E.D. Mich. 2013) (remanding because no expert opinion on equivalence in the record), *adopted by* 2013 WL 773017 (E.D. Mich. 2013); *Maynard v. Comm'r of Soc. Sec.*, 2012 WL 5471150 (E.D. Mich. 2012) ("[O]nce a hearing is requested, SSR 96-6p is applicable, and requires a medical opinion on the issue of equivalence."). While the undersigned is not necessarily convinced that plaintiff

can show that her mental impairments satisfy the equivalency requirements, the undersigned finds that the lack of an expert medical opinion on the issue of equivalency is problematic and violated the requirements of SSR 96-6p. For this additional reason, the undersigned recommends that, on remand, the ALJ should obtain the opinion of a qualified medical advisor on the issue of equivalence as to plaintiff's mental impairments.

### 2. Sentence Six Remand

Under sentence six of 42 U.S.C. § 405(g), plaintiff has the burden to demonstrate that the evidence is "new" and "material" and that there is "good cause" for failing to present this evidence in the prior proceeding. *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 598 (6th Cir. 2005). Courts "are not free to dispense with these statutory requirements." *Hollon*, 447 F.3d at 486. "Good cause" is *not* established solely because the new evidence was not generated until after the ALJ's decision; the Sixth Circuit has taken a "harder line" on the good cause test. *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986); *see also Perkins v. Apfel*, 14 Fed. Appx. 593, 598-99 (6th Cir. 2001). A plaintiff attempting to introduce new evidence must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision. *See Hollon*, 447 F.3d at 485; *see also Brace v. Comm'r of Soc. Sec.*, 97 Fed. Appx. 589, 592

38

(6th Cir. 2004) (claimant's decision to wait and schedule tests just before the hearing with the ALJ did not establish good cause); *Cranfield v. Comm'r of Soc. Sec.*, 79 Fed. Appx. 852, 859 (6th Cir. 2003). Additionally, in order to establish materiality, plaintiff must show that the introduction of the new evidence would have reasonably persuaded the Commissioner to reach a different conclusion. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *Sizemore v. Sec. of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988); *Hensley v. Comm'r of Soc. Sec.*, 214 Fed. Appx. 547, 550 (6th Cir. 2007).

Even if plaintiff could establish "good cause," she has failed to establish that the records are "material," and thus has failed to meet her burden for a sentence six remand. To establish "materiality," plaintiff must explain how the introduction of the new evidence would have reasonably persuaded the Commissioner to reach a different conclusion. Here, plaintiff simply argues that because the new records confirm a diagnosis of fibromyalgia, that she was disabled from 2004 forward. However, the records submitted by plaintiff are mostly from the post-last date insured period and plaintiff wholly has failed to demonstrate *how* the additional evidence would have reasonably persuaded the ALJ to reach a different conclusion. *See Sizemore*, 865 F.2d at 711-12. The additional records document plaintiff's condition after a serious car accident, which took place after the last date insured. As to the fibromyalgia diagnosis, it is

39

well-settled that the mere existence of any condition from which plaintiff might have suffered does not necessarily mean that condition is "severe" under the Act. Notably, the Appeals Council considered these records in evaluating plaintiff's disability claims and found this information did not provide a basis for changing the ALJ's decision.  As to the post-accident records plaintiff does not explain how these records would relate to her limitations going back to 2004.  Finally, as to the Easter Seals records, the Commissioner correctly points out that these records reflect an improvement in plaintiff's condition over the course of her treatment and do not establish any disabling limitations.  Even if the ALJ had considered these records, nothing in them suggests that the ALJ's determination would have been different because of them.  For these reasons, the undersigned concludes that plaintiff has failed to meet her burden to demonstrate that the evidence is "material."  Accordingly, a sentence six remand is not appropriate and plaintiff's motion should be denied in this regard.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED** in part and **DENIED** in part, that defendant's motion for summary judgment be **GRANTED** in part and **DENIED** in part, that the findings of the Commissioner be **REVERSED** in part, and that this matter be **REMANDED** for further proceedings under Sentence

Four.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: February 23, 2015            s/Michael Hluchaniuk
                                   Michael Hluchaniuk
                                   United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 23, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Monique Dragiou, Andrew Lievense, and Meghan O'Callaghan.</u>

                                   <u>s/Tammy Hallwood</u>
                                   Case Manager
                                   (810) 341-7887
                                   tammy_hallwood@mied.uscourts.gov